**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NICHOLAS PAUL MASLONKA,

      Petitioner,                    Civil No. 2:13-CV-14110
                                       HONORABLE ARTHUR J. TARNOW
v.                                   UNITED STATES DISTRICT JUDGE

BONITA HOFFNER,

      Respondent.
_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## THE PETITION FOR A WRIT OF HABEAS CORPUS

      Nicholas Paul Maslonka, ("Petitioner"), incarcerated at the Lakeland

Correctional Facility, in Coldwater, Michigan, filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, through his counsel Andrew Wise and

Jessica Lefort of the Federal Defender Office, challenging his conviction for

armed robbery, M.C.L.A. § 750.529. Petitioner is currently serving a sentence of

15 to 25 years for the armed robbery conviction.

      Petitioner raises a number of claims alleging the ineffective assistance of

trial counsel, and subsequent ineffective assistance of appellate counsel, in

addition to challenges pertaining to the voluntariness of his plea.

      This Court finds that petitioner was denied the effective assistance of trial

counsel when his attorney failed to appear at critical stages that required

petitioner's cooperation, set forth by the prosecution, to fulfill the contingency of

the plea agreement offered by the prosecution.  Due to his attorney's absence, and subsequent allegations of insufficient cooperation on behalf of petitioner, petitioner was forced to accept a much less favorable plea offer, two hours prior to the commencement of his trial.  In addition to this being a structural defect, the attorney did not provide adequate assistance of counsel, resulting in prejudice to the petitioner and requiring habeas relief.  Accordingly, the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED.**

## I. Background

Petitioner was convicted following entry of a plea in the Macomb County Circuit Court.

At his arraignment on December 26, 2008, Detective Eidt met petitioner in the holding area and asked about drug trafficking connections. [Doc. 3, Pg ID 39; Doc. 10, Pg ID 807; Doc. 45, Pg ID 2372].  Petitioner provided Eidt with three names, which Eidt took to the Drug Enforcement Administration ("DEA") agents for review. [*Id.*, Doc. 45 Pg ID 2376].  The agents were very interested and agreed to meet with petitioner. [Doc. 3, Pg ID 39-40, 807-808].

Four DEA agents visited petitioner at the jail on December 31, 2008.  Petitioner requested counsel, but the agents informed him that "it was not their responsibility to" arrange that. [*Id.*, Pg ID 40, 808, 2377].  The agents told petitioner that they would not "reschedule this" meeting with him and that "Either you are going to give help right now or we walk out this door and we are not

coming back and anything you have coming is lost." [Doc. 45, Pg ID 2378].

Petitioner then spent three hours providing the agents with information related to

his drug trafficking contacts. [Doc. 3, Pg ID 41; Doc. 10, Pg ID 809; Doc. 45 Pg ID

2378].

On January 6, 2009, the day of his preliminary hearing, petitioner met with

his court-appointed attorney, Salle Erwin, who informed petitioner that Eidt told

her that the DEA found his information "credible and exceptional" and wanted to

schedule another interview. [*Id.*, Doc. 45 Pg ID 2381]. Petitioner requested

Erwin's presence at "any further potential interview with the DEA," to which she

agreed. [*Id.*, Pg ID 41-42, 809; Doc. 45 Pg ID 2383].

The following day petitioner was writted out of jail for a ride-along and

meeting with DEA agents. [*Id.*, Pg ID 42, 810; Doc. 9-1, Pg ID 796-801].

Although requested by petitioner to be there, Erwin was not present. For fear of

losing a cooperation deal, petitioner proceeded without counsel. [Doc. 45, Pg ID

2386]. During the ride-along and meeting, which lasted for a total of six hours,

petitioner allowed the agents to search his house and business for documents,

and provided extensive information of an inter-state drug trafficking organization

and its financial structure. [Doc. 3, Pg ID 42-43; Doc. 10, Pg ID 810-811; Doc.

9-1, Pg ID 796-801; Exhibit 53, U.S. Department of Justice, Drug Enforcement

Administration, Report of Investigation; Doc. 45, Pg ID 2386-88].

On February 5, 2009, DEA agents again met with petitioner for two hours and went over documents they obtained from his house and business. [Doc. 9-1, Pg ID 803-804]. Erwin was not present for this interview. [*Id.*; Doc. 10, Pg ID 811-12]. When petitioner asked the agents about his lawyer, they said that Erwin told Detective Eidt "that she was too busy with a bunch of cases that she had to take care of and she couldn't attend." [Doc. 45, Pg ID 2394].

At the subsequent pre-trial hearing on February 9, 2009, Erwin was not present and petitioner voiced concerns about Erwin's representation, which included her failure to meet with him and attend DEA interviews. [Doc 21-3, Pg ID 1461; Doc. 3, Pg ID 43; Doc. 9-1, Pg ID 745; Doc. 10, Pg ID 812]. Petitioner "expressed to the judge that [he] had grave concern[s] about [Erwin's] representation because she had totally been non-existent basically." [Doc. 45, Pg ID 2395]. The trial court judge agreed to hear petitioner's concerns, but asked that Erwin be present, and set another pre-trial date. [Doc. 9-1, Pg ID 745; Doc 21-3, Pg ID 1461].

The DEA and detective Eidt met again with petitioner in late February. [Doc. 3, Pg ID 45; Doc. 10, Pg ID 813]. Again, Erwin was not present. [*Id.*].

The final pre-trial conference took place on March 18, 2009. Erwin met with petitioner in lock-up and told him she had spoken to the federal and state prosecutors, and that Prosecutor Fox had agreed to make an offer which dismissed the habitual offender charge outright, resulting in a guidelines range of

a minimum of nearly 7 years. [Doc. 21-5, Pg ID 1467-1469].  Erwin then said that she would also seek a downward departure based on petitioner's cooperation, and that Fox had agreed not to oppose the departure. [Doc. 10, Pg ID 815; Doc. 46, Pg ID 2419].  Erwin told petitioner that the offer was contingent on his testifying before a grand jury. [Doc. 3, Pg ID 46; Doc. 10, Pg ID 815].

Fox placed the state's "last best offer" on the record, which consisted of a guidelines range of 81-135 months (6 years, 9 months to 11 years, 3 months), and the dismissal of the habitual offender charge, based on petitioner's continued cooperation.  Specifically, Fox informed the Court that there was "an intervening court proceeding before [the] scheduled trial that may effect whether [the] plea moves forward," referring to the upcoming hearing before the grand jury. [Doc. 9-1, Pg ID 753; Doc. 21-5, Pg ID 1467].  Fox stated that he would keep this offer open up until the day of trial. [*Id.*].  Due to a misunderstanding, Erwin indicated on the record that petitioner was hesitating to accept the deal. [Doc. 21-5, Pg ID 1468].  Petitioner requested a brief recess, during which time he informed Erwin this was the deal he had agreed to, except it was missing the agreement on the departure motion, to which she responded "that would come at sentencing." [Doc. 3, Pg ID 47-48; Doc. 10, Pg ID 816; Doc. 46, Pg ID 2422].

The judge then advised Erwin to visit petitioner before the grand jury hearing, to "make sure you are both on the same page," and Erwin agreed to do so. [Doc. 21-5, Pg ID 1469].  Petitioner "never [got] a visit from Ms. Erwin" prior to

appearing before the grand jury on April 7th to provide testimony. [Doc. 3, Pg ID 48; Doc. 10, Pg ID 817; Doc. 46, Pg ID 2424].

Approximately three weeks later, on April 7th, petitioner met with DEA agents and an assistant U.S. attorney to review grand jury testimony.  Erwin was not present. [*Id.*].  When petitioner said he would feel better if Erwin was present, he was told that there was not time to reschedule, and that they needed to prepare his testimony as soon as possible. [*Id.*; Doc. 46, Pg ID 2426].

Petitioner was writted out of the jail and spent thirty minutes reviewing his testimony with the federal prosecutor, who asked before leaving if the DEA agents could present a couple of questions to petitioner. [*Id.*].  The questions regarded individuals who were not connected with petitioner's grand jury testimony. [*Id.*]  Following the discussion, the agents informed petitioner that the grand jury would not meet, that they had all the information they needed from him, and that his grand jury testimony was no longer necessary. [*Id.*; Doc. 46, Pg ID 2431].

On the day of trial, the prosecutor rescinded the plea offer citing lack of cooperation on April 7th, and offered a subsequent less favorable plea offer two hours before the commencement of petitioner's trial. [Doc. 21-6, Pg ID 1472].

Petitioner's conviction was affirmed on appeal. *People v. Maslonka,* No. 304898, *1 (Mich. Ct. App. Aug. 10, 2011), *lv. den.* 490 Mich. 974, 806 N.W.2d 739 (2011).

While petitioner's direct appeal was pending, petitioner filed a motion to withdraw his guilty plea, which was construed as a post-conviction motion for relief from judgment filed pursuant to M.C.R. 6.500, *et seq.* and denied. *People v. Maslonka*, No. 2009-0045-FC (Macomb County Circuit Court, Nov. 3, 2010).[1] The Michigan appellate courts denied petitioner leave to appeal. *People v. Maslonka*, No. 305058 (Mich. Ct. App. March 23, 2012); *lv. den.* 493 Mich. 856, 821 N.W.2d 166 (2012).

On October 25, 2012, petitioner filed a second motion for relief from judgment, which was dismissed as a successive motion for relief from judgment. *People v. Maslonka*, No. 2009-0045-FC (Macomb County Circuit Court, Dec. 11, 2012).

Petitioner filed a petition for a writ of habeas corpus on September 26, 2013. Respondent filed an answer to the petition on December 16, 2013. On February 8, 2016, this Court appointed counsel to represent petitioner. On May 23, 2016, petitioner, through his new counsel, Andrew Wise and Jessica Lefort, filed a supplemental petition for a writ of habeas corpus, seeking relief on the on the basis of ineffective assistance of trial and appellate counsel in violation of the Sixth Amendment, and violations of his Fifth Amendment right to due process.

---

[1]The judge construed the motion to withdraw as a motion for relief from judgment, because petitioner sought to withdraw his guilty plea more than six months after he had been sentenced. Under M.C.R. 6.310(c), a defendant may file a motion to withdraw the plea within six months after sentence. If a defendant wishes to withdraw a guilty plea more than six months after being sentenced, he or she may do so "only in accordance with the procedure set forth in subchapter 6.500." [The Michigan Court Rule governing post-conviction relief]. *Id.*

Respondent filed a response to the supplemental petition on June 16, 2016.

An evidentiary hearing was conducted before this Court on March 9, 2017

and March 10, 2017.  The issues discussed at the hearing were:

1) Whether there was an absence of counsel at a critical stage of the

proceedings, and

2) Whether counsel was ineffective when she failed to:

> A) Place the cooperation agreement in writing, thereby allowing Fox to withdraw the favorable plea offer on a mere allegation of non-cooperation;
> B) Obtain information from the DEA regarding petitioner's cooperation; and
> C) Document the extent of petitioner's cooperation and appraise the court at sentencing of the extensive cooperation given by petitioner.

The parties filed supplemental briefs on May 24, 2017, followed by

petitioner's reply brief filed on May 31, 2017.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

Petitioner contends that he was denied the effective assistance of counsel when his attorney failed to appear at meetings scheduled with the DEA, which were the basis of a cooperation agreement entered into by petitioner in exchange for a plea to armed robbery with a sentence of 81-135 months (6 years, 9 months to 11 years, 3 months) on the minimum sentence and dismissal of the habitual offender charge. Petitioner further claims that due to counsel's absence, as well as counsel's failure to place the terms of the cooperation agreement into writing or familiarize herself with the terms of the cooperation

agreement, petitioner was placed in a precarious position when the prosecution withdrew the offer, claiming that petitioner did not sufficiently fulfill the terms of the cooperation agreement, and then offered petitioner a much less favorable plea, two hours prior to the commencement of petitioner's trial. [Doc. 21-6, Pg ID 1472]. Rather than outright dismissal of the habitual charge and a minimum guideline sentence of 81-135 months (6 years, 9 months to 11 years, 3 months), petitioner was given the option of accepting a plea to a habitual third and 108 to 270 months (9 years to 22 years, 6 months) on the minimum guidelines, or to proceed to trial. Petitioner accepted the plea and was ultimately sentenced to 15 to 25 years in prison.

Petitioner contends in his Habeas Petition, pp. 6-8, 19, supplemental attachments, and his Supplemental Reply brief, page 11, that he was denied representation throughout the plea negotiation process and had counsel participated in the grand jury preparation, ~~and~~ met with him prior to the grand jury hearing, or been present at the hearing, she could have cleared up any confusion as to what was expected of petitioner and whether the terms of the cooperation agreement had been met. More importantly, had counsel secured a written cooperation agreement outlining petitioner's obligations, petitioner would not be in the position, on the day of trial, of having to prove that he met the terms of the cooperation agreement, so as to be entitled to the plea offer.

Respondent contends that petitioner's claim is procedurally defaulted because he raised it only for the first time in his second motion for relief from judgment and the trial court relied on M.C.R. 6.502(G)(1) to deny petitioner's claim. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan can typically file only one motion for relief from judgment with regard to a criminal conviction. *See Banks v. Jackson,* 149 F.App'x 414, 418 (6th Cir. 2005); *Mohn v. Bock,* 208 F. Supp. 2d 796, 801 (E.D. Mich. 2002); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999)(citing to *People v. Ambrose*, 459 Mich. 884; 587 N.W.2d 282 (1998)). However, M.C.R. 6.502(G)(2) states that a defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. *Banks,* 149 F.App'x at 418; *Mohn,* 208 F. Supp. 2d at 801; *Hudson,* 68 F. Supp. 2d at 800-01.

Respondent did not raise a procedural default defense in his initial answer to the petition for a writ of habeas corpus that was filed on December 16, 2013. Respondent clearly waived this defense by stating that "[t]he State is not arguing that any of Maslonka's habeas claims are barred by procedural default," thereby waiving a procedural default defense. (Response Brief, p.5). Respondent raised the procedural default defense only for the first time in the supplemental answer filed on June 16, 2016.

Procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be considered waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural default normally constitutes waiver of the default). By failing to argue that petitioner's claim was procedurally defaulted in the initial answer, respondent has waived any defense that the claim is procedurally defaulted. *See Williams v. Birkett,* 697 F. Supp. 2d 716, 722 (E.D. Mich. 2010); *vacated on other grds,* 670 F.3d 729 (6th Cir. 2012); *on remand,* 895 F. Supp. 2d 864 (E.D. Mich. 2012); *Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 828 (E.D. Mich. 2004); *modified on other grds,* 340 F. Supp. 2d 773 (E.D. Mich. 2004); *see also Miller v. Stovall,* 641 F. Supp. 2d 657, 665 (E.D. Mich.2009)(State, by failing to argue harmless error defense in its response to federal habeas corpus petition, waived issue)*; Dickens v. Jones,* 203 F. Supp. 2d 354, 361 (E.D. Mich. 2002)(state waived affirmative defenses that habeas petitioner's federal habeas claims were noncognizable and waived because of petitioner's alleged misrepresentation and failure to object, where state failed to assert affirmative defenses in its initial answer to the habeas petition); *Benoit v. Bock,* 237 F. Supp. 2d 804, 807 (E.D. Mich. 2003) (Respondent's failure to raise issue of procedural default constituted implicit waiver of that affirmative defense to state prisoner's federal habeas petition). Respondent's failure to argue in his initial answer that petitioner's claim was procedurally defaulted waives this procedural defense.

Before ruling on the merits of petitioner's underlying claim, this Court notes that the Macomb County Circuit Court, the last court to issue a decision on petitioner's claim, never addressed the merits of this claim. When a state court fails to adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo. See Cone v. Bell,* 556 U.S. 449, 472 (2009); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *see also McKenzie v. Smith,* 326 F.3d 721, 726 (6th Cir. 2003). In the present case, the Macomb County Circuit Court declined to address the merits of petitioner's claim that he raised in his second post-conviction motion. Therefore, "there are simply no results, let alone reasoning, to which this Court can defer. Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *McKenzie,* 326 F.3d at 727; *see also Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003)(Michigan courts' failure to consider the petitioner's ineffective assistance of counsel claims rendered the AEDPA's deferential standard of review inapplicable. Thus, the Sixth Circuit would review petitioner's claims under a *de novo* standard). This Court cannot apply the deferential standard of review contained in the AEDPA, but must review *de novo* petitioner's claim.

Petitioner initially contends that he was denied the assistance of counsel at a critical stage of the proceedings against him when his trial counsel was absent during the entire pendency of his pre-plea cooperation meetings and assistance with the government.

The U.S. Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *Penson v. Ohio*, 488 U.S. 75, 88 (1988); *United States v. Cronic*, 466 U.S. 648, 659 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). The U.S. Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. *Cronic*, 466 U.S. at 659, n.25; *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992).

"The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). The Sixth Circuit has presumed that a criminal defendant's pre-trial cooperation period is a critical stage of the

proceedings, at least prior to the entry of a written cooperation agreement. *Wingo v. United States*, 341 F.App'x 132, 134 (6th Cir. 2009)(pre-trial cooperation period assumed to be critical prior to entry of a *Kastigar* agreement). A federal court can "consider lower court decisions to the extent they shed light on the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013). Moreover, "[i]f the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule… . Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." *Williams v. Taylor*, 529 U.S. at 382 (quoting *Wright v. West*, 505 U.S. 277, 308-309 (1992)).

Petitioner was constructively denied the assistance of counsel because counsel was absent during petitioner's meetings with the DEA, which were contingent on receiving the more favorable plea bargain offered by the prosecution. Petitioner was denied counsel during the critical stages of implementing the cooperation agreement. "[A]n attorney's assistance is critical to the cooperation process in a number of respects, including, but not limited to, facilitating communication between the defendant and the government, attending

proffer sessions, ascertaining the government's expectations and whether the defendant is satisfying them, communicating the client's limitations to the government, and establishing a record of attempts to cooperate." *United States v. Leonti*, 326 F.3d 1111, 1119 (9th Cir. 2003). Counsel's physical absence at every stage of petitioner's cooperation "certainly constitutes denial of counsel." *Peters v. Chandler*, 292 F.App'x 453, 465 (6th Cir. 2008)(citing *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961)). Lack of appearance at these meetings is not disputed by respondent.

Compounding the error is the fact that petitioner's trial counsel never met with petitioner before or after his meetings with the DEA, in order to offer petitioner advice or debrief him on the nature of the discussions between the DEA agents and himself.

ABA Standards provide:

Defense counsel should seek to establish a relationship of trust and confidence with the accused and should discuss the objectives of the representation and whether defense counsel will continue to represent the accused if there is an appeal. Defense counsel should explain the necessity of full disclosure of all facts known to the client for an effective defense, and defense counsel should explain the extent to which counsel's obligation of confidentiality makes privileged the accused's disclosures.

To ensure the privacy essential for confidential communication between defense counsel and client, adequate facilities should be available for private discussions between counsel and accused.

1 ABA Standard for Criminal Justice 1(a) & (b).

The United States Supreme Court applied a standard of reasonableness

when ascertaining whether counsel provided adequate representation, as follows:

> "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. [The Supreme Court has long] recognized that [p]revailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable...." *Padilla v. Kentucky*, 559 U.S. 356, 366–67, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (internal citations and quotations omitted). The same is equally true of an agent's obligations to his principal under the law of agency. *See e.g., Maples v. Thomas*, —— U.S. ——, 132 S.Ct. 912, 924, 181 L.Ed.2d 807 (2012). "Although they are only guides, and not inexorable commands, these standards may be valuable measures of the prevailing professional norms of effective representation...." *Padilla v. Kentucky*, 559 U.S. 356, 366–67, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)(internal citations and quotations omitted).

*Gunner v. Welch*, 749 F.3d 511, 516 (6th Cir. 2014).

A criminal defendant who is denied adequate consultation with his or her attorney is constructively denied the assistance of counsel.

In *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir.2003), the Sixth Circuit held that there was a complete denial of counsel where the defendant's attorney spent approximately six minutes in the course of three separate meetings with the defendant in the "bull pen" prior to the start of trial.

In *United States v. Morris*, 470 F.3d 596, 601-02 (6th Cir. 2006), the Sixth Circuit held that a defendant facing state charges of firearms and drug possession was constructively denied the right to counsel, when counsel was assigned shortly before defendant attended the hearing at which he was offered a choice of a plea bargain or the transfer of his case to federal prosecution with

17

a potential of a higher sentence. The Sixth Circuit observed that counsel did not meet with defendant until the day of the hearing, when they conversed for a few minutes in the "bull pen" and counsel was forced to review his client's options in a crowded and noisy room with no privacy. *Id.* The Sixth Circuit also indicated that the fee system for court-appointed counsel, whereby counsel was paid a $40.00 fee for appearing at the pre-preliminary hearing, but received no additional fee if they requested a continuance for additional preparation, provided "counsel an incentive to encourage the defendant to accept the state's plea offer immediately, and a disincentive to seek more time to investigate and seriously weigh the merits of a defendant's case." *Id.*, at 601, n. 4.

In *Turner v. Bagley,* 401 F.3d 718, 721, 723, 727 (6th Cir. 2005), the Sixth Circuit granted petitioner a writ of habeas corpus on an ineffective assistance of appellate counsel claim, based in part on the fact that petitioner had inadequate consultation with one of his appellate attorneys. *Id.* at 721.

In *Williams v. Birkett*, 697 F. Supp. 2d at 726, this Court ruled that the state circuit court's practice of assigning counsel shortly before a probation violation hearing amounted to a state impediment to effective assistance of counsel. In reaching this conclusion, the Court noted that counsel admitted that he was unaware of petitioner's special educational needs and cognitive problems, nor did he appear to know the precise nature of the probation violation charges against petitioner. Counsel never raised any defense to the probation

violation charge, nor did he make any objection or offer any argument when the trial court berated petitioner. *Id.* This Court also noted that counsel failed to mention petitioner's special educational needs and cognitive problems to attempt to mitigate the sentence imposed. *Id.*

In this case, counsel's physical absence at every stage of petitioner's cooperation constituted a complete denial of counsel. Furthermore, the record reflects that counsel was unaware of the extent of petitioner's cooperation and made no mention of petitioner's cooperation at the time of sentencing. Counsel merely agreed with the assessment made on the record that things didn't work out, without reference to petitioner's cooperation or lack of cooperation. No appeal for leniency was given by counsel at the time of sentencing in connection with petitioner's cooperation and no details pertaining to the cooperation given can be found anywhere on the record. The record merely reflects that counsel parroted the information given to her by the DEA as to whether petitioner cooperated, or failed to cooperate. This ~~approach~~ can be seen from the record where counsel informed the trial court judge, "I'm going to be in touch with Mr. Fox after the Grand Jury on the 7th," and then counsel's reporting to the trial court that things didn't work out, in response to the withdraw of the plea by the prosecutor. [Doc 21-6]. Trial counsel appeared on the trial date without making prior contact with the U.S. Attorney's office, the prosecutor's office or her client and was totally unaware of the circumstance which resulted in the withdrawl of

the plea offer.

Because petitioner was deprived of the assistance of counsel at a critical stage of the proceedings, automatic reversal of his conviction is required, without any showing of prejudice.

Petitioner further contends that counsel was ineffective, and prejudice can be shown, when the terms of the cooperation agreement were never placed in writing, allowing for the offer to be withdrawn on a mere allegation of non-cooperation, when counsel failed to obtain information from the DEA regarding petitioner's cooperation, failed to document the extent of petitioner's cooperation, and failed to appraise the court at sentencing of the extensive cooperation given by petitioner.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must

show that such performance prejudiced his defense. *Id.* To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.

The Sixth Amendment right to counsel extends to the plea bargaining

process. *Lafler v. Cooper,* 132 S. Ct. at 1384; *Missouri v. Frye,* 132 S. Ct. 1399,

1406 (2012). Thus, a criminal defendant during plea negotiations is "entitled to

the effective assistance of competent counsel." *Lafler,* 132 S. Ct. at 1384

(quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The Supreme

Court noted in *Frye,*

> The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours "is for the most part a system of pleas, not a system of trials," *Lafler*, post, at 1388, 132 S.Ct. 1376, it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process.

566 U.S. at 143–44.

As the Court stated in *Frye*, the plea negotiation stage "is not some

adjunct to the criminal justice system, it *is* the criminal justice system." 566 U.S.

at 144 (emphasis original). Ninety-seven percent of federal cases and

ninety-four percent of state cases, resolve in pleas. *Frye*, 566 U.S. at 143;

*Lafler*, 566 U.S. at 170. The Sixth Circuit recently stated, "[I]t is undisputed that

21

the plea negotiation process is adversarial by nature and the average defendant is ill equipped to navigate the process on his own." *Turner v. United States*, 848 F.3d 767, 773 (6th Cir. 2017) *rehr'g granted en banc* 2017 WL 1359475 (6th Cir. Apr. 13, 2017). The Supreme Court declined to delineate the components required of counsel during the plea negotiation process finding that "[t]he alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Frye*, 566 U.S. at 145. The Court by acknowledging that negotiations take many forms and include many different factual scenarios, left it to the lower courts to determine whether ineffective assistance exists during the plea negotiation stage on a case by case basis.

Petitioner alleges that trial counsel was ineffective, and prejudice can be shown, by counsel's failure to place the agreement in writing, consult with petitioner regarding the terms of the cooperation agreement, debrief petitioner as to cooperation rendered in conjunction with the cooperation agreement, meet with petitioner to prepare for the meetings with the DEA, meet with petitioner to prepare petitioner to give grand jury testimony, and allocute on behalf of petitioner at the time of sentencing to the extent of his cooperation.

The record reflects that the prosecutor placed the state's "last best offer" on the record, indicating that the intent was "to keep the offer open until the day

of trial." (Doc. 21-5, Pg ID 1467).  The trial court judge reiterated the agreement as follows:

> THE COURT: So the offer being made, which will be open through the day of trial, is guilty to Count 1, dismiss habitual fourth, estimated guidelines 81 to 135, cooperation will have been extended and complied with prior to our April 14th trial date, is that --
>
> MS. ERWIN: Yes. It is scheduled for the 7th of April.
> *******************************************************************************
> THE COURT: So what you are saying is if there is cooperation on the 7th then the plea would be guilty to Count 1, dismiss habitual fourth?
>
> MR. FOX : Correct.

[Doc. 21-5, Pg ID1467, 1468].

When petitioner requested to meet with counsel prior to April 7th, the trial court judge directed counsel to meet with petitioner, prior to the grand jury and indicated that she could petition the court for additional fees as follows:

> THE DEFENDANT: Would it be possible --considering the high profile case that we've had going on it is really hard to talk back there, and so things get crossed up because you can't really say everything back there. I have to go back to jail with these people, and considering what is going on that is sometimes not a good thing.
>
> THE COURT: Well, obviously I didn't participate in the decisions which landed you back there to begin with.
>
> THE DEFENDANT:  Right, no.
>
> THE COURT:  Perhaps if Counsel has an opportunity, you're asking that she come and see you at the jail in private.
>
> THE DEFENDANT:  Right.
>
> MS. ERWIN: In segregation? I hate to see him -- you don't want to go into segregation?

THE COURT: Not him in segregation, but my understanding is that if you come see him at the jail you have an opportunity to talk to him with a few less people around.

MS. ERWIN: Yes, I can do that.

THE COURT: Okay.

MS. ERWIN: And will do that.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE COURT: And I do agree with your client that sometimes it is difficult to do that in the lockup in the courthouse, but you also have the opportunity to request any additional fees, but I would prefer that you make sure that you're both on the same page.

[Doc. 21-5, Pg ID 1469].

The pre-trial hearing defined the terms of cooperation expected from petitioner and the record clearly indicates that the only additional term that existed pertained to petitioner's testimony on April 7th before the grand jury. At the pre-trial hearing, which defined the terms of the cooperation agreement, petitioner asked the court if he could meet with counsel privately prior to appearing before the grand jury. The court informed counsel that additional funds could be requested, instructing counsel to meet with petitioner ahead of the grand jury, to "make sure you are both on the same page." Counsel agreed to do so. [*Id.*].

The grand jury was to meet on April 7, 2009. Counsel failed to visit petitioner at the jail and was absent when petitioner met with the federal prosecutor to review his testimony. Petitioner contends that the federal

prosecutor then asked him if DEA agents present could ask a couple of questions. He further contends that it was then that the agents sought information about several individuals unrelated to petitioner's grand jury testimony or his cooperation to date, informing petitioner that if he provided the additional information, they would seek additional consideration from the prosecutor. Petitioner responded by informing the agents that the prosecutor had already indicated on the record that the deal on the table was the best he was going to get. When petitioner would not expand the scope of the questioning, petitioner claims that the DEA agents escorted him back to his cell, telling him that the grand jury would not meet, and his testimony was no longer needed.

Petitioner is entitled to habeas relief, because he has established that trial counsel was ineffective by her absence during critical stages of the proceedings which were contingent upon him getting the plea agreement offered in exchange for his cooperation and because petitioner was prejudiced by counsel's mistakes.

Trial counsel was ineffective for failing to inquire into the nature of petitioner's cooperation, nor did she attempt to secure a written or oral cooperation agreement in order to define the scope of that cooperation. *Leonti*, 326 F.3d at 1121 (counsel ineffective for making no attempt to define scope or method of cooperation).

Counsel also failed to mitigate her physical absences by debriefing petitioner about his cooperation or seeking the reports of any of his sessions, in order to apprise herself of the status of his cooperation efforts. *Id.* (counsel ineffective for failing to appear at debriefings or discuss them with client).

Not only did counsel fail to advise her client during the critical stages during the implementation of a cooperation agreement, by defining and placing the terms into a written agreement and being present to vouch for petitioner's compliance, counsel further failed to advise her client before the calling of the grand jury, and failed to be present at the time that the federal prosecutor met with petitioner to go over petitioner's testimony. At this point, the decision was made not to use petitioner's testimony before the grand jury. At this critical stage, the prosecutor withdrew the plea offer claiming that petitioner failed to comply with the cooperation agreement.

Both the trial court judge and petitioner were aware that petitioner's presence on April 7th to possibly provide grand jury testimony was pivotal in obtaining the plea offered by the prosecutor at the last pre-trial conference. [Doc. 9-1, Pg. ID 753]. Both the trial court judge and Agent Robert Ziskie stressed the need of a defendant and counsel to be "on the same page" prior to the giving of grand jury testimony. [Doc. 21-5, Pg ID 1469; Doc. 46, Pg ID 2584]. The trial court judge at the pre-trial hearing directed trial counsel to petition for additional fees and meet with petitioner at the jail to prepare for the grand jury testimony.

26

Just as trial counsel was totally unaware of all cooperation rendered by petitioner up to the grand jury hearing, trial counsel was also totally unaware of the grand jury process or her role of acting as standby counsel to assist her client. [Doc. 45, Pg ID 2354, 2362]. Trial counsel did not prepare petitioner to give testimony before the grand jury, as instructed by the trial court judge and merely told him to cooperate, [Id., Pg ID 2362], nor did she appear as standby counsel to vouch that petitioner complied, or rehabilitate petitioner, if necessary, to obtain the plea offer.

Trial counsel's willful ignorance of petitioner's cooperation, and her inability to participate as standby counsel, left her unable to rebut the prosecutor's assertion on the trial date that petitioner had been uncooperative with law enforcement and therefore, was not entitled to the plea offer as articulated on the record at the last pre-trial conference.

It is clear from the record that petitioner cooperated at each meeting with the DEA, as indicated at the last pretrial hearing. The absence of counsel, when the grand jury was to be called, created an opportunity to withdraw the plea agreement on a mere allegation by the prosecutor that petitioner had not cooperated. Respondent does not deny that the prosecutor chose not to use petitioner's testimony before the grand jury. Choosing not to use petitioner's testimony prevented petitioner from complying with the last contingency of the plea agreement, if that was a requirement for obtaining the more favored plea

offer. Had trial counsel been present, she could have advocated on behalf of her client as to his compliance or rehabilitate her client if necessary. The record clearly indicates that if there was cooperation on April 7th, the prosecutor was prepared to accept the plea outlined at the pretrial hearing.

On the trial date, the prosecutor withdrew the plea offer based on the representations made by the U.S. Attorney. Trial Counsel reported the determination made by the U.S. Attorney, as reported by the prosecutor, to the trial court judge.

Furthermore, trial counsel did not allocute on behalf of her client at sentencing and never indicated to the court the extensive cooperation given by petitioner, resulting in the trial court judge informing trial counsel "he gets nothing" for his cooperation. [Doc. 46, Pg ID 2473-2474]. Trial counsel merely indicated to the trial court that the plea agreement was based on his cooperation with the DEA. Trial counsel was totally unaware of the terms of the cooperation agreement between her client and the DEA, having never discussed the terms with the DEA, or her client, never seeking to obtain and reduce the terms of the cooperation agreement to writing, never debriefing her client, never meeting with her client as instructed by the trial court to prepare for the giving of grand jury testimony, and never consulting with her client or attempting to rehabilitate her client prior to the withdrawal of the plea agreement on the day of trial.

Trial counsel also failed to move the sentencing court for a downward

departure from the sentencing guidelines range based on the value of petitioner's proffered information. Trial counsel never attempted to argue that the sentencing court exhibit leniency in light of petitioner's cooperation, as evidenced by the extensive information provided within the DEA's Report of Investigation. [Doc. 9-1, Pg. ID 796-801]. "In short, [trial counsel] never did anything to make it more likely that [petitioner] would in fact be able to provide substantial assistance[.]" *Leonti*, 326 F.3d at 1121, or advocate on behalf of her client as to the level of her client's cooperation, which was unknown to trial counsel. This court directly questioned trial counsel as to when petitioner "hit the wall" in his cooperation. Trial counsel could not provide any specifics as to an impediment or whether petitioner fulfilled the terms of the cooperation agreement.

> THE COURT:  Can I repeat the question?  The question is, if he thought that he had fulfilled the contract, how were you to know whether to advise him, to give him more or not to give him more?  In other words, the scope of the contract.

> THE WITNESS:  I always encouraged him to work with them to the fullest extent of his ability.

> ********************************************************************************

> THE COURT:  But you have testified several times that all you could say to Mr. Fox is that he started out good and stopped.  But you couldn't say to Mr. Fox that he fulfilled the contract.

> THE WITNESS:  No, I couldn't.  I couldn't say that, no, and I didn't.  I just know that the DEA agents said he started out helping them and then it stopped.

[Doc. 45, Pg ID 2363-2364].

The record clearly indicates that counsel was absent during the plea negotiation process. It also shows that trial counsel did not advocate on behalf of her client, failing to meet the minimum standards of the effective assistance of counsel. Petitioner pleaded to an offer which was originally made following the arraignment in exchange for his trial rights. The prosecutor testified, as follows, that such an offer is customarily made to avoid trial and was not the result of any negotiations with trial counsel.

A. Yes. Exactly as I normally would, the week before, I reviewed his file. And, again, obviously there is a lot of specifics from this nine years ago I don't recall. But to the best of my recollection I would have reviewed his file the week before his arraignment. Within that, I would have reviewed his criminal history, the actual facts of the case. If there was a victim where I particularly cared about their position or was concerned how they would feel about our resolving the case, I would contact them. And then I normally notate within the file itself, a manila folder with all the documents inside, I normally notate what was going to be my initial offer at the time of arraignment before meeting with defense counsel or anyone else involved in the case.

Q. And in this specific case, do your remember what your initial offer was?

A. I do. The initial offer was to reduce the habitual notice from a habitual fourth offender status to habitual third. No reduction in the charge itself. He would have to plead as charged otherwise.

Q. And just so we are clear, this is before you've really met anyone or handled the case in court, is that right?

A. Yes.

[Doc. 46, Pg. ID 2488].

30

Petitioner was prejudiced by counsel's absence when the prosecutor withdrew the plea, citing lack of cooperation at the time petitioner was to testify before the grand jury on April 7th.  Petitioner was also prejudiced by trial counsel's deficient performance when she failed to ascertain the terms of the plea agreement, reduce the terms to writing, meet, discuss, debrief, and rehabilitate her client in connection with the grand jury proceedings.  The record clearly reflects trial counsel's absence or deficient representation throughout the plea negotiation process and at sentencing resulted in petitioner accepting the initial plea offered by the prosecutor to a habitual third, no reduction in the charge, in exchange for waiving his trial rights, which was offered before petitioner had any contact with trial counsel.

The question becomes what the appropriate habeas remedy would be in this case.  A federal habeas court has broad discretion in conditioning a judgment granting habeas relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). 28 U.S.C. § 2243 authorizes federal courts to dispose of habeas corpus matters "as law and justice require."  Cases involving deprivations of the Sixth Amendment right to the assistance of counsel are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation. *United States v. Morrison,* 449 U.S. 361, 364 (1981).

The proper remedy in this case is to issue a writ of habeas corpus conditioned upon the state prosecutor reoffering the original plea agreement.

*Lafler,* 132 S. Ct. at 1391.[2]

Because this Court's conclusion that petitioner is entitled to habeas relief on his assistance of counsel claim during the pre-plea cooperation period and at sentencing is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so. *See Satterlee v. Wolfenbarger,* 374 F. Supp. 2d 562, 567 (E.D. Mich. 2005).

## IV.  ORDER

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE STATE TAKES ACTION TO RE-OFFER THE MORE FAVORABLE PLEA AGREEMENT WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, PETITIONER MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.

s/Arthur J. Tarnow
HON. ARTHUR J. TARNOW
SENIOR U.S. DISTRICT JUDGE

Dated: June 21, 2017

---

[2] Petitioner also alleges that his three different appellate attorneys were ineffective for failing to raise this claim on his direct appeal.  In light of the fact that this Court is granting petitioner habeas relief on his assistance of trial counsel claim, petitioner's ineffective assistance of appellate counsel claim is now moot. *Couch v. Booker*, 650 F. Supp. 2d 683, 696 (E.D. Mich. 2009), *aff'd*, 632 F.3d 241 (6th Cir. 2011).